UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

# CASE NO. 10-12407-B

CHUBB CUSTOM INSURANCE
COMPANY,

     Appellant,

v.

VISTA VIEW APARTMENTS, LTD.,

     Appellee.

Appeal from the United States
District Court for the Southern
District of Florida; Miami Division
Case No. 08-22772-Civ-King

**APPELLANT CHUBB CUSTOM INSURANCE COMPANY'S
<u>INITIAL BRIEF</u>**

CINDY L. EBENFELD
Fla. Bar No. 980579
cebenfeld@mhickslaw.com
ERIK P. BARTENHAGEN
Fla. Bar No. 43259
ebartenhagen@mhickslaw.com
**HICKS, PORTER, EBENFELD & STEIN, P.A.**
11011 Sheridan Street, Suite 104
Cooper City, FL 33026
Tel: 954/624-8700
Fax: 954/624-8064

*Counsel for Appellant Chubb Custom Insurance Company*

*Chubb Custom Ins. Co. v. Vista View Apt., Ltd.*
Case No.: 10-12407-B

## APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

In compliance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3, Appellant, Chubb Custom Insurance Company ("Chubb"), certifies that the following represents a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10 percent or more of the party's stock, and other identifiable entities related to a party:

- Bandstra, Ted E., United States Magistrate Judge

- Bartenhagen, Erik, Esq., Attorney for Defendant/Appellant Chubb

- Chubb Custom Insurance Company, a wholly-owned subsidiary of Federal Insurance Company

- Ebenfeld, Cindy L., Esq., Attorney for Defendant/Appellant Chubb

- Federal Insurance Company, a wholly-owned subsidiary of The Chubb Corporation

- Hicks, Porter, Ebenfeld & Stein, P.A., Attorneys for Defendant/Appellant Chubb

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

- King, James Lawrence, United States District Court Judge, Southern District of Florida

- Law Offices of Leo A. Manzanilla, P.A., Attorneys for Plaintiff/Appellee Vista View Apartments, Ltd.

- Manzanilla, Leo A., Esq., Attorney for Plaintiff/Appellee Vista View Apartments, Ltd.

- Schwartz, Adam, Esq., Attorney for Plaintiff/Appellee Vista View Apartments, Ltd.

- The Chubb Corporation, a publicly traded company on the New York Stock Exchange (ticker symbol CB)

- Vigilant Insurance Company, Surety on Civil Supersedeas Bond

- Vista View Apartments, Ltd., Plaintiff/Appellee

## <ins>STATEMENT REGARDING ORAL ARGUMENT</ins>

Appellant believes that oral argument will materially assist this Court in resolving the complex issues involved in this appeal.  Accordingly, oral argument is requested.

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

# TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................ C1

STATEMENT REGARDING ORAL ARGUMENT ................................................. i

TABLE OF CITATIONS ...................................................................... iv

STATEMENT OF JURISDICTION ................................................................ viii

STATEMENT OF THE ISSUE .................................................................. 1

STATEMENT OF THE CASE ................................................................. 1

STATEMENT OF THE FACTS ................................................................ 4

A.    The insurance policy ................................................................. 4

B.    Vista View makes two distinct and successive claims under the Policy arising out of a sewage backup event. ................................................. 6

C.    Vista View's lawsuit demanding appraisal and the District Court's refusal to address coverage issues prior to appraisal ................................ 12

D.    The appraisal award includes non-covered items, but the District Court again refuses to address coverage issues and enters judgment for the entire amount of the award ..................................................... 15

E.    Standard of review ................................................................. 20

SUMMARY OF ARGUMENT ................................................................ 21

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

ARGUMENT

I.    THE DISTRICT COURT ERRED AS A MATTER OF LAW BY ENTERING JUDGMENT WITHOUT EVER CONSIDERING CHUBB'S COVERAGE DEFENSES. .......................................................23

A.    Insurance appraisals are enforceable, encouraged, and can sometimes address issues of causation, but questions of coverage must be determined exclusively by the courts. ...........................................................24

B.    Where an insurer contests the scope of coverage by admitting coverage for certain claimed losses and denying coverage for others, like Chubb here, Florida law allows the insurer to challenge coverage for disputed elements of loss following an appraisal. ...................................31

C.    The District Court's erroneous decision was based on inapplicable and outdated case law, ignored a key distinguishing feature, unfairly provided a windfall recovery to Vista View, and violated due process, fundamental fairness, and common sense. ...................................38

CONCLUSION ....................................................................................... 54

CERTIFICATE OF COMPLIANCE....................................................... 56

CERTIFICATE OF SERVICE ................................................................ 57

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

# TABLE OF CITATIONS

**PAGE**

## FEDERAL CASES

*Bonafonte v. Lexington Ins. Co.*,
   2008 WL 2705437 (S.D. Fla. No. 08-21062-CIV-MARTINEZ
   July 9, 2008) ...........................................................................................37, 39, 40

*Bonner v. City of Pritchard, Ala.*,
   661 F.2d 1206 (11th Cir. 1981) ...........................................................................47

*Dorset House Condo. Ass'n, Inc. v. QBE Ins. Corp.*,
   2007 U.S. Dist. LEXIS 62298, 20 Fla. L. Weekly Fed. D980
      (S.D. Fla. No. 07-21324-CIV-JORDAN Aug. 1, 2007) ...........................36, 40

*Essex Ins. Co. v. Zota*,
   466 F.3d 981 (11th Cir. 2006) .............................................................................51

*Essex Ins. Co. v. Zota*,
   607 F. Supp. 2d 1340 (S.D. Fla. 2009)...........................................................51, 52

*Grupo Televisa, S.A. v. Telemundo Commc'ns Group, Inc.*,
   485 F.3d 1233 (11th Cir. 2007) ...........................................................................24

*Jablonski v. St. Paul Fire & Marine Ins. Co.*,
   2009 WL 2252094 (M.D. Fla. July 24, 2009)......................................................46

*Jones v. United Space Alliance, L.L.C.*,
   494 F.3d 1306 (11th Cir. 2007) ...........................................................................20

*Lee v. Frozen Food Express, Inc.*,
   592 F.2d 271 (5th Cir. 1979) ..........................................................................46, 47

*Maryland Cas. Co. v. Hallatt*,
   326 F.2d 275 (5th Cir. 1964) ...............................................................................47

*Morrison v. Allstate Indem.*,
   1999 WL 817660 (M.D. Fla. Sept. 9, 1999) .......................................................50

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

*Provau v. State Farm Mut. Auto. Ins. Co.*,
   772 F.2d 817 (11th Cir. 1985) ............................................................47

*Sands on the Ocean Condo. Ass'n, Inc. v. QBE Ins. Corp.*,
   2009 WL 790120 (S.D. Fla. Mar. 24, 2009) ...................................passim

*Telemundo Television Studios, LLC v. Aequicap Ins. Co.*,
   --- So. 3d ----, 2010 WL 2382595 (Fla. 3d DCA June 16, 2010) ........................50

*Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*,
   362 F.3d 1317 (11th Cir. 2004) ....................................................passim

*Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*,
   250 F. Supp 2d 1357 (M.D. Fla. 2003) ..............................................42

*United States v. Brenson*,
   104 F.3d 1267 (11th Cir 1997) ..........................................................20

## STATE CASES

*AIU Ins. Co. v. Block Marina Inv., Inc.*,
   544 So. 2d 998 (Fla. 1989) .........................................................50, 51

*Am. Reliance Ins. Co. v. Village Homes at Country Walk*,
   632 So. 2d 106 (Fla. 3d DCA 1994)..................................................25

*Citizens Prop. Ins. Corp. v. Cuban-Hebrew Congregation of
   Miami, Inc.*, 5 So. 3d 709 (Fla. 3d DCA 2009) ...................................49

*Epps v. State*,
   941 So. 2d 1206 (Fla. 4th DCA 2006) ..............................................52

*Fernandez v. U.S. Fid. & Guar. Co.*,
   308 So. 2d 49 (Fla. 3d DCA 1975)....................................................50

*Fisher v. Certain Interested Underwriters at Lloyds Subscribing to
   Contract 242/99*, 930 So. 2d 756 (Fla. 4th DCA 2006) ..............................passim

v

*Fla. Ins. Guar. Ass'n, Inc. v. Olympus Ass'n, Inc.*,
    34 So. 3d 791 (Fla. 4th DCA 2010)................................................................passim

*Fla. Windstorm Underwriting v. Gajwani*,
    934 So. 2d 501 (Fla. 3d DCA 2005)................................................................33

*Gen. Sec. Ins. Co. v. Barrentine*,
    829 So. 2d 980 (Fla. 1st DCA 2002)................................................................50

*Gonzalez v. State Farm Fire & Cas. Co.*,
    805 So. 2d 814 (Fla. 3d DCA 2000)................................................................28, 29, 30

*J.B. v. Fla. Dep't of Children and Family Servs.*,
    768 So. 2d 1060 (Fla. 2000) ................................................................52

*Johnson v. Nationwide Mut. Ins. Co.*,
    828 So. 2d 1021 (Fla. 2002) ................................................................passim

*Kendall Lakes Townhomes Developers, Inc. v. Agric. Excess & Surplus*
    *Lines Ins. Co.*, 916 So. 2d 12 (Fla. 3d DCA 2005) ................................................................37

*Liberty Am. Ins. Co. v. Kennedy*,
    890 So. 2d 539 (Fla. 2d DCA 2005)................................................................passim

*Nationwide Mut. Ins. Co. v. Johnson*,
    774 So. 2d 779 (Fla. 2d DCA 2000)................................................................28, 29, 30

*Opar v. Allstate Ins. Co.*,
    751 So. 2d 758 (Fla. 1st DCA 2000) ................................................................27

*Paradise Plaza Condo. Ass'n, Inc. v. The Reinsurance Corp. of N.Y.*,
    685 So. 2d 937 (Fla. 3d DCA 1996)................................................................25, 26, 33

*Scottsdale Ins. Co. v. Desalvo*,
    666 So. 2d 944 (Fla. 1st DCA 1995)................................................................25, 27

*Scull v. State*,
    569 So. 2d 1251 (Fla. 1990) ................................................................52

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

*State Farm Fire & Cas. Co. v. Middleton*,
  648 So. 2d 1200 (Fla. 3d DCA 1995)................................................................24

*State Farm Fire & Cas. Co. v. Licea*,
  685 So. 2d 1285 (Fla. 1996) ....................................................................passim

*State Farm Fla. Ins. Co. v. Hill*,
  1 So. 3d 1272 (Fla. 3d DCA 2009)....................................................................36

*Sunshine State Ins. Co. v. Rawlins*,
  34 So. 3d 753 (Fla. 3d DCA 2010)....................................................................33

*U.S. Fid. & Guar. Co. v. Romay*,
  744 So. 2d 467 (Fla. 3d DCA 1999)..................................................................27

## FLORIDA STATUTES

§ 626.9541(1)(i)(4), Fla. Stat. (2008) ...................................................... 53

## OTHER STATES

*State Farm Lloyds v. Johnson*,
  290 S.W.3d 886 (Tex. 2009) ............................................................................40

## OTHER AUTHORITIES

Anne D. Ogden, Appraisal Clauses in Homeowners Insurance Policies:
  An Overview, 27 No. 1 Trial Advoc. Q. 24, 26 (Winter 2008) ........................40

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

## <u>STATEMENT OF JURISDICTION</u>

Pursuant to 28 U.S.C. § 1291 and Fed. R. App. P. 4(a), this Court has jurisdiction over this appeal from the District Court's entry of final judgment and other final decisions. (DE 26, 27, 50, 53).

The District Court's Order Confirming Appraisal Award was entered on April 26, 2010, and final judgment was entered on May 10, 2010. (DE 50, 53). Appellant's Notice of Appeal was timely filed on May 18, 2010. (DE 54).

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

## STATEMENT OF THE ISSUE

Whether the District Court erred when it forced Chubb to pay its insured, Vista View Apartments, Ltd. ("Vista View"), the entire amount of an appraisal award arising out of Vista View's first-party property insurance claim despite the fact that Chubb consistently argued that portions of Vista View's claim and the resulting appraisal award fell outside of the policy's coverage, where the District Court refused to rule on contested coverage issues at any time either before or after the appraisal, rejected Chubb's request for a line-item appraisal award, and ignored language in the appraisal award stating that it was subject to the terms and conditions of the policy?

## STATEMENT OF THE CASE

This initial brief is filed on behalf of Defendant/Appellant Chubb.  In this appeal, Chubb seeks reversal of the District Court's improper confirmation of the entire amount of an appraisal award in favor of Chubb's insured, Vista View. Chubb has consistently challenged Vista View's ability to recover the vast majority of the damages ultimately awarded by the appraisal panel throughout the proceedings below, but the District Court never addressed Chubb's coverage defenses, either before or after the appraisal.

Vista View made two separate but related claims under its property insurance policy with Chubb arising out of a sewer backup at Vista View's

1

apartment complex on December 30, 2007. The first claim concerned repairs to common area walkways, corridors and entrance tiles to Vista View's four apartment buildings necessitated by water and sewage intrusion. Following an initial investigation into the cause of the sewage backup, Chubb acknowledged coverage for these discrete repairs and tendered payment of just under $19,000.00.

Almost five months after the sewage backup event, Vista View informed Chubb for the first time that it was also demanding coverage for the replacement of the complex's entire underground sanitary system, which it estimated would cost between $600,000.00 and $800,000.00. Before Chubb could complete its investigation into this second, more significant claim, Vista View demanded appraisal under the Chubb insurance policy and brought suit in state court to compel this appraisal.

Chubb removed Vista View's lawsuit to federal court, and in its answer thereto denied that coverage existed for Vista View's second claim for replacement of its underground pipes. Throughout the litigation below, Chubb has consistently argued that language contained in Vista View's insurance policy with Chubb precluded coverage for this second loss. Chubb agreed to participate in the appraisal process, but with the important caveat that the District Court either rule on Chubb's coverage defenses beforehand and submit only covered losses to the appraisal panel, or alternatively permit the appraisal panel to create a line-item

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

award that would allow the District Court to intelligently rule on such coverage defenses after the award was issued. Chubb argued that one of these courses of action was necessary to ensure that Vista View not obtain a windfall recovery for losses that were not covered under the Chubb insurance policy.

The District Court denied both forms of relief, and the dispute was submitted to the appraisal panel. Although the panel was not required to itemize the damages, it nonetheless produced an appraisal award that itemized costs between repairs necessary for Vista View's two separate loss claims, which would have allowed the District Court to easily exclude non-covered losses when it later confirmed the award. Instead, the District Court again refused to even consider Chubb's coverage defenses, and entered final judgment against Chubb and in favor of Vista View for the entire amount of the award (more than $850,000.00), even though the vast majority of this award was for losses that are clearly not covered under the policy.

Chubb's valid legal defenses were never heard or addressed below, which conflicts with Florida law and is at odds with due process principles. As a result, Chubb seeks reversal of the final judgment and a remand directing the District Court to rule on Chubb's coverage defenses and reduce the appraisal award as appropriate following a full and fair hearing. In the alternative, Chubb requests that this Court certify a question to the Florida Supreme Court seeking guidance on

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

Florida law as to whether or not an insurer is allowed to bring coverage challenges to part, but not all, of an appraisal award.

## STATEMENT OF THE FACTS

**A.    The insurance policy.**

Chubb issued a commercial property insurance policy (the "Policy") to Vista View providing building coverage for a residential apartment complex owned by Vista View in Sunny Isles, Florida. (DE 22, Ex. A). The insured apartment complex consists of five buildings – four six-story apartment buildings and a centrally-located leasing office with attached pool. (DE 6, Ex. B at pp. 54-55) (the "Property").   The limit of insurance for each of the four apartment buildings (designated as Premises #1 to #4) was listed as $7,171,200, while the limit for the leasing office (designated as Premises #5) was listed as $380,000, with a $5,000 deductible. (DE 22, Ex. A at pp. A 12-14).

The Policy stated that Chubb "will pay for direct physical loss or damage to **building** or **personal property** caused by or resulting from a peril not otherwise excluded . . . ." (*Id.* at p. A 19) (emphasis in original).[1]  The term "building" was defined in the Policy as a "structure" and its "components" and "additions," but was specifically defined not to include "underground pipes, flues or drains,"

---

[1] All emphasis herein is supplied unless otherwise noted.  The bolded language contained in the Policy is in the original and reflects defined terms.

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

"paved or concrete surfaces," the "cost of excavations, grading, backfilling or filling," and "foundations or supports of structures, machinery or boilers, below the surface of the lowest floor or basement." (*Id.* at pp. A 68-69). The Policy also contained a "tear out and replace" provision stating that Chubb would "pay for the cost to tear out and replace any part of a **building** to repair or replace a system or appliance from which water or other substance escapes," but <u>only if</u> the escape of water was "caused by or results from a peril not otherwise excluded . . . ." (*Id.* at p. A 62).

The Policy contained various exclusions from coverage. Except with respect to an automatic sprinkler system, the Policy excluded from coverage "any defect to a system or appliance from which water, other liquid, powder or molten material escapes . . . ." (*Id.* at p. A 30). The Policy also contained exclusions for direct physical loss or damage caused by or resulting from: (1) latent defects; (2) faulty of inadequate planning, design, materials, or maintenance; (3) corrosion; (4) wear and tear; and (5) continuous water leakage. (*Id.* at pp. A 52, 55, 57-58, 60).

The Policy contained an appraisal clause if Chubb and Vista View disagreed on the dollar amount of the loss or damage, which read as follows:

> If you and we do not agree on the amount of the loss or damage, either party may make a written demand for an appraisal of the loss or damage. In this event, you will select and pay a competent and impartial appraiser, and we will select and pay a competent and impartial appraiser. The two appraisers will select an umpire . . . . Each appraiser will separately state the value of the property and the

amount of the loss or damage.  If the appraisers do not agree, they will submit their statements to the umpire.  Agreement by the umpire and either of the appraisers will be binding on you and us.

You and we will equally share any other appraisal costs and the costs of the umpire.

If there is an appraisal, we will still retain our right to deny the claim.

(*Id.* at p. A 62).

**B.    Vista View makes two distinct and successive claims under the Policy arising out of a sewage backup event.**

On December 30, 2007, while the Policy was in full force and effect, a representative of Vista View reported to Chubb a sewage water backup at the Property that caused damage to the common area walkways, corridors and entrance tiles to some or all of Vista View's four apartment buildings (i.e., Premises #1 to #4). (DE 6 at p. 9).  Four days later, a Chubb adjuster met with representatives of Vista View to investigate the loss, and in the weeks that followed Chubb engaged a mechanical engineer (SEA, Ltd.) and a plumber (TDT Plumbing) to conduct further investigation and testing into the cause of the sewer backup and the extent of the damage to the Property's common area walkways, corridors and entrance tiles. (*Id.* at pp. 9-10).

TDT Plumbing produced its report first, and it found that the cast iron piping at the Property was in "fair-to-poor condition" and that "[g]rease buildup was observed throughout the lines of the sanitary system." (DE 6 at Ex. A, p. 104).  It

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

recommended that Vista View conduct "[r]egular cleaning/hydro-jetting of the sanitary plumbing system . . . to remove buildup and debris and help ensure proper flow." (*Id.* at p. 105). SEA, Ltd. produced its report one month later, and similarly found that "[a] majority of the sanitary system piping examined by SEA exhibited heavy grease build-up" that was attributed to "a lack of maintenance." (*Id.* at Ex. B, p. 62). The report also noted that a number of sections of piping "had an upward pitch or 'belly'" that made it "difficult for a pipe to drain properly, thereby allowing material to accumulate in that section of the pipe." (*Id.*). Echoing TDT Plumbing, SEA, Ltd. recommended hydro-jetting and regular flushing of the sanitary piping. (*Id.*). The report noted that the cast iron piping was original to the 1972 construction of the Property, and therefore approximately thirty-six years old at the time. (*Id.* at p. 54).

While it was investigating the cause of the sewer backup as described above, Chubb prepared an estimate for cleaning the common area walkways, corridors and entrance tiles. (*Id.* at Ex. C, pp. 32-33). Having determined that coverage existed under the Policy to address the physical damage to these first-floor common areas caused by the sewer backup, Chubb wrote to Vista View on March 14, 2008, indicating that it would soon be forwarding a check to Vista View in the amount of $18,810.81, which represented the estimated cost of $23,810.81 to clean the walkways, corridors and entrance tiles, less the $5,000.00 deductible. (*Id.*).

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

More than two months later, Vista View responded to Chubb by letter dated May 19, 2008, stated that the $18,810.81 check was "woefully inadequate," and demanded an appraisal under the Policy. (*Id.* at Ex. D, p. 115). Vista View's new adjuster then wrote to Chubb on May 28, 2008, challenging the conclusions reached by TDT Plumbing and SEA, Ltd. regarding the cause of the sewer backup and the general conditions of the Property's sanitary plumbing, and stating that all of the sewer lines had breaks and were "collapsed." (DE 1, Comp. Ex. D at pp. 117-18). Enclosed with this letter was an estimate from Vista View's retained plumber, A&I Enterprises, for the complete removal and replacement of the sanitary piping for all four apartment buildings at a cost of $800,000.00. (*Id.* at pp. 119-20).

Vista View's May 28, 2008 letter did not address the costs for cleaning the common area walkways, corridors and entrance tiles, nor did it indicate whether it took issue with the $18,810.81 estimate provided by Chubb. Indeed, the letter ignored the original claim by Vista View for this common area property damage due to sewage backup, which Chubb believed at that time to be Vista View's only claim under the Policy. Instead, the May 28, 2008 letter represented the first time that Chubb was advised by Vista View that it was seeking damages for the replacement of the sewer lines.

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

Vista View's May 28, 2008 letter indicated that because a "difference of opinion" existed between the two plumbers (i.e. TDT Plumbing and A&I Enterprises), Vista View would engage a third plumber to inspect the sanitary piping. (*Id.* at p. 118). Vista View engaged Statewide Septic Connection, and its report dated June 30, 2008 indicated that the pipes "contained strong amounts of grease and sand," and that based on the cleaning it performed and the video it recorded, the system was "in poor condition" and had "many breaks." (*Id.* at p. 123). It estimated that the cost to remove and replace the sanitary piping at all four buildings would be $600,000.00. (*Id.* at p. 125).

In response to this new claim under the Policy, Chubb indicated that additional investigation was required before any further action could be taken. In a letter dated July 11, 2008, Chubb acknowledged that Vista View had "obtained expert evaluations regarding the sewer system," but cautioned that Chubb would "need to determine the cause of loss to the sewer system before we can provide you with a coverage assessment" under the Policy, and suggested that the parties hold a meeting at the location with the experts. (DE 6 at Ex. E, p. 126). In the meantime, Vista View finally responded to Chubb's estimate for cleaning the common area walkways, corridors and entrance tiles. Vista View forwarded to Chubb a detailed estimate dated July 27, 2008 that asserted that the cleaning and repair cost to these areas and additional units amounted to $380,418.63, which was

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

much higher than the $23,081.81 total at which Chubb had arrived. (DE 1, Comp. Ex. D at p. 232).

Vista View was unsatisfied with Chubb's position that further investigation into the condition of the sewer lines was needed, and wrote to Chubb on July 31, 2008, complaining that the documentation already provided should have "trigger[ed] payment," and once again demanding an appraisal under the Policy. (*Id.* at Ex. F, p. 138). This letter indicated that it was a "1st Request" even though it was the second time that Vista View had demanded appraisal. (*Id.*). Approximately two weeks later, on August 15, 2008, Chubb acknowledged receipt of Vista View's appraisal demand but indicated that appraisal was premature with respect to the complete replacement of the sanitary piping because this was a relatively new claim by Vista View that had not yet been fully investigated by Chubb, stating as follows:

> The appraisal process is a condition of the policy which states "if you and we do not agree on the amount of loss or damage, either party may make a written demand for an appraisal of the loss or damage." The amount of loss or damage is not in dispute at this time as we have not determined if we have a covered loss for the replacement of the sewer lines, which has recently been claimed. We reject your demand for appraisal for this reason as our investigation into the cause of loss is not complete.

(DE 1 at Ex. G, p. 263). Chubb advised Vista View that it had retained Exponent Failure Analysis Associates ("Exponent") to further investigate the cause of loss to

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

the sewer system, and requested a mutually convenient time for an on-site inspection. (*Id.*).

Chubb and Vista View's adjuster agreed to allow Exponent to perform an on-site inspection of the sewer lines on September 8, 2008. (DE 6 at p. 13). However, five days before this scheduled inspection Vista View filed suit on September 3, 2008 to require an appraisal, as more fully described below.

During the course of the lawsuit, the District Court granted Chubb access to the Property (over Vista View's objection), and Chubb completed its investigation in early 2009. (DE 10, 11, 13, 14). Exponent's report based on its two-day site inspection with TDT Plumbing found that the sewer lines "contained lots of grease" and that such buildups "restrict the capacity of the sewer" and could "cause a blockage." (DE 22, Ex. C at p. 3). The report also noted that many of the pipes had an "incorrect slope" that allowed effluent to build up, and discovered "locations where the bottom of the pipe had corroded away." (*Id.*). Exponent researched the expected service life of cast iron sewer pipes without a protective coating (such as those at the Property) and discovered that a 30-year lifespan would be "reasonable." (*Id.* at pp. 6-7). As a result, Exponent concluded that "the gravity sewer system in the Vista View complex has reached or nearly reached the end of its useful life" and that "increased maintenance will be required to guard against blockages." (*Id.* at p. 7).

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

**C.     Vista View's lawsuit demanding appraisal and the District Court's refusal to address coverage issues prior to appraisal.**

Vista View filed its Petition to Compel Appraisal and/or For Declaratory Decree in state court. (DE 1, Ex. E).  Vista View inaccurately described only one "loss" in its Petition, and incorrectly stated that Chubb had "investigated the loss and acknowledged insurance coverage for the loss." (*Id.* at p. 3).  Chubb timely removed the case to federal court (DE 1), and in its Answer, Affirmative Defenses, and Counter-Petition pointed out that it was still investigating the cause of loss related to Vista View's second claim for replacement of the sewer pipes. (DE 6 at p. 2).  In its Counter-Petition, Chubb noted that there were a number of Policy terms and exclusions that could apply to prevent coverage for replacement of the sewer lines, depending on the outcome of Chubb's ongoing investigation as to the specific cause of that particular loss. (*Id.* at p. 26).  At the same time, however, Chubb recognized that appraisal was appropriate with respect to the cleaning of the common area walkways, corridors and entrance tiles, for which it had already acknowledged that coverage existed and about which the parties differed regarding the amount of loss. (*Id.*).

As a result, Chubb requested that the District Court take one of two alternative actions: <u>either</u> (1) rule on legal coverage issues immediately and then order an appraisal limited to those elements of loss that the District Court determined were covered under the Policy; <u>or</u> (2) submit all disputed losses to

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

appraisal and require the panel to itemize each loss on a line-item basis so the District Court could later rule on coverage and enter an appropriate judgment based on its legal conclusions. (*Id.* at pp. 26-27).

Vista View then moved for summary judgment demanding an appraisal, and argued that Chubb was not entitled to either form of relief it requested. (DE 20). Confusing the concepts of causation with coverage and ignoring the fact that there were two loss claims and not one, Vista View stated that Florida law was "unequivocal" that "when an insurer admits and does not wholly deny there is a covered loss, causation is an amount-of-loss question to be determined by the appraisal panel, not a coverage issue to be decided by the court." (DE 20 at p. 2). Vista View also argued that Chubb was not entitled to a line-item appraisal because the Policy itself did not call for such itemization. (*Id.* at pp. 14-15). Vista View asserted that if Chubb continued to contest coverage after the appraisal then "there is an appropriate avenue for doing so." (*Id.* at p. 6). However, it did not identify this "avenue" nor elaborate on how Chubb would be able to effectively challenge coverage without a prior coverage ruling by the District Court or a line item appraisal award that would allow the District Court to make an informed coverage ruling after the appraisal.

Chubb raised various arguments in its opposition memorandum and its related motion seeking either an appraisal of covered items only or a line-item

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

appraisal. (DE 22, 23).  Chubb explained that requiring an appraisal of that portion of Vista View's loss claim related to the replacement of the sewer pipes without a prior coverage ruling from the District Court or an itemization based on causation would result in Chubb being "unfairly penalized" because it would be forced to pay for both covered and non-covered losses and would therefore be "stuck with paying more than it is legally required to pay." (DE 23 at pp. 1-2).  Chubb also noted that numerous courts had allowed line-item appraisal awards as a matter of fairness and convenience, and that the case law cited by Vista View did not address those circumstances, like that seen here, where coverage was not a matter of all or nothing and the scope of coverage was disputed. (*Id.* at pp. 6-19).

The District Court granted Vista View's summary judgment motion, and denied Chubb's requested relief. (DE 26).  Echoing Vista View's pleadings, the District Court in its Order did not appear to appreciate that there were two distinct loss claims: (1) the clean-up of the common area walkways, corridors and entrance tiles where Chubb had acknowledged coverage but disputed the amount of loss; and (2) the replacement of the sewer pipes for all four apartment buildings where Chubb had consistently denied the existence of coverage.  Instead, the District Court determined that Chubb had "acknowledged coverage" of the entire loss, and characterized the dispute as one involving only the proper dollar amount of that loss. (*Id.* at p. 2).  Like Vista View, the District Court also confused the concepts of

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

causation (a factual issue sometimes within an appraisal panel's purview) and coverage (a legal issue that must always be determined by the courts), ruling as follows:

> [T]his Court concludes that the appraisal provision in the Policy is unambiguous and mandates that any disagreement as to the amount of repairs must be resolved by the appraisal process when either Party so demands. As to the Respondent's request that this Court should assert its authority and exclude any alleged non-covered items from the appraisal process, the Court finds that, in this instance, the question of causation must be left to the appraisers. . . . Furthermore, the Court finds that a review of the Policy reveals that nothing in the plain language of the Policy provides for the itemization of the loss on a line-item basis as requested by the Respondent.

(DE 26 at pp. 3-4). The District Court retained jurisdiction to confirm the appraisal award and enter final judgment based thereon. (DE 27).

**D.    The appraisal award includes non-covered items, but the District Court again refuses to address coverage issues and enters judgment for the entire amount of the award.**

On December 21, 2009, an appraisal award was entered unanimously by both parties' appraisers and the neutral umpire. (DE 43, Ex. A). The award for the various losses totaled $916,691.63, which was further broken down into four specific categories of loss: (1) $65,157.31 for ensuing damage to the common area walkways, corridors and entrance tiles as a result of the sewage backup; (2) $484,647.52 for tear out and repair of the building necessary to perform the replacement of the entire sanitary plumbing system; (3) $175,770.00 for the labor, materials and permits necessary to replace the old cast iron pipes of the entire

sanitary plumbing system with PVC lines; and (4) $191,116.80 for physically unearthing and accessing the old sanitary lines. (*Id.* at A 63-66). Thus, even though the District Court did not order the appraisal to be itemized, the parties' appraisers and the umpire voluntarily took it upon themselves to create an itemized award segregating the losses by category.

The appraisal award incorporated the report of an independent plumbing contractor retained at the umpire's request. The plumber's report stated that the lines contained "a large amount of grease" in the pipes for all four buildings that had "solidified in the pipes therefore causing the stoppages . . . ." (*Id.* at p. A 4-5). The report also noted "several areas where the pipes are sagging causing low spots where the waste cannot drain and the grease builds up, eventually leading to the stoppages. . . ." (*Id.*). Notably, the appraisal award stated on its first page and in bold type that the total award must be "**reduced by any applicable deductible(s)**" and by "**prior payment(s),**" and that the award was "**[s]ubject to terms and conditions of the insurance policy**." (*Id.* at p. A 1).

Because Chubb did not dispute that coverage existed for the ensuing damage to the common area walkways, corridors and entrance tiles, it immediately tendered to Vista View the difference between the appraisal panel's total for these

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

damages and the $18,810.81 it had already paid. (DE 43 at p. 5).[2]   However, Chubb continued to maintain the position that the remainder of the appraisal award for costs associated with removal and replacement of the entire sanitary system was simply not covered under the Policy.   As a result, Chubb filed a motion seeking to have the District Court confirm only the covered portions of the appraisal award. (DE 43).

In this motion, Chubb set forth in detail those portions of the Policy that precluded coverage for the damage to Vista View's sanitary system, including but not limited to the Policy's definition of "building," the Loss Payment Limitations provision,[3] and exclusions for latent defects, faulty or inadequate planning, design, materials, or maintenance, corrosion, wear and tear, and continuous water leakage. (*Id.* at pp. 5-8, 11-15).   Chubb pointed out that counsel for Vista View had admitted during the hearing on Vista View's earlier summary judgment motion that at least a portion of the award – $175,770.00 for the cost related to purchasing and installing the new PVC pipes – would not be covered under the policy.   During

---

[2] Chubb's position was that it was responsible for the actual cash value of the ensuing damage of $61,549.12, and not the replacement cost value of $65,157.31. (DE 43 at p. 3, fn. 1).   As a result, Chubb subtracted the $18,801.81 from the $61,549.12 actual cash value figure, and sent Vista View a check for the difference – $42,738.31.

[3] This provision states that Chubb will not pay for the cost to repair any defect to a system from which water or other liquid escapes.   (DE 22, Ex. A, at A 30).

the summary judgment hearing held on June 10, 2009, counsel for Vista View made the following statements: (1) "**[W]e've never claimed that they owe for the pipe**;" (2) "**We do not believe, nor have we ever claimed, that they should pay for the actual pipe or the plumbing system**;" and (3) "**Not replacing the pipes. We're not even asking for that**." (DE 40, Ex. C at pp. 14-16).  Chubb argued that based on Vista View's admission, it would be highly inequitable to nonetheless award Vista View reimbursement for clearly non-covered losses. (*Id.* at p. 5).

Vista View opposed Chubb's motion, arguing that the appraisal panel had determined that all four elements of loss were "covered under the subject policy of insurance," despite the fact that the issue of coverage is reserved exclusively for the courts, the existence of the disclaimer on the very first page of the appraisal award clearly stating that the award was made subject to the terms and conditions of the Policy, and Vista View's admissions in open court that it was not entitled to portions of the award. (DE 48 at p. 3).  Vista View thus invited the District Court to decline to consider whether any of the approximately $850,000.00 in challenged costs was covered under the Policy, arguing that Florida law required that Chubb pay the entire appraisal award regardless of whether it may have had valid coverage defenses. (*Id.* at p. 6).  In making this argument, Vista View once again confused causation with coverage, and actually went so far as to equate the two,

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

asserting that "the issue of causation (and therefore coverage) has already been determined by the appraisal panel when it rendered its award." (*Id.* at p. 8).[4]

As before, the District Court rejected Chubb's arguments in favor of Vista View's positions and entered an order confirming the entire appraisal award. (DE 50). The District Court noted that Chubb was asking it "to exclude non-covered items from the Appraisal Award," but reasoned that it was powerless to do so based on its earlier ruling "finding that the question of causation must be left to the appraisers." (*Id.* at p. 3). It also cited to the Eleventh Circuit's decision in *Three Palms Pointe, Inc. v. State Farm Fire & Casualty Co.*, 362 F.3d 1317 (11th Cir. 2004), for the proposition that an insurer can allegedly only challenge the award "as a whole" after an appraisal, and is powerless to challenge certain parts of that award under any circumstances. (*Id.*). As a result, the District Court entered a final judgment ordering Chubb to pay Vista View $855,142.51, which represented the entire replacement cost value appraisal award of $916,691.63 less prior payments

---

[4] Vista View also argued that the "tear out and replace" provision of the Policy applied and that coverage therefore existed for all items of loss related to the sewer replacement. (DE 48 at p. 5). Chubb responded that this provision only applied where the water escape "is caused by or results from a peril not otherwise excluded" and that here the consensus was that the water escape was caused by a variety of non-covered perils, such as wear and tear, corrosion, poor design and poor maintenance. (DE 43 at pp. 12-15; DE 49 at pp. 5-6). The District Court never addressed these substantive coverage arguments.

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

of $18,810.81 and $42,738.31. (DE 53).[5]  Chubb then brought this timely appeal. (DE 54).

## E.     Standard of review.

The District Court initially granted Vista View's summary judgment motion compelling an appraisal and rejected Chubb's request that either non-covered losses be excluded from appraisal or that the appraisal panel be required to produce a line itemization of losses.  Then, after the appraisal panel issued its award, the District Court declined to address any of Chubb's legal coverage arguments and entered final judgment for the entire amount of the award, less prior payments. Both decisions were based solely on the District Court's interpretation of the Policy's appraisal clause and its application of Florida case law (both state and federal).  As a result, this appeal turns on pure issues of law.  Such issues are reviewed *de novo* by this Court.  *Jones v. United Space Alliance, L.L.C.*, 494 F.3d 1306, 1309 (11th Cir. 2007) ("We review *de novo* a district court's interpretation of a state law."); *United States v. Brenson*, 104 F.3d 1267, 1287 (11th Cir 1997) (holding that review of a district court's "legal conclusion" requires "*de novo* review").

---

[5] The District Court simply confirmed the full $916,691.63 award which used replacement cost value figures throughout, refusing to address Chubb's argument that the terms of the Policy required the use of the $882,937.31 actual cash value figure instead. (DE 43 at p. 3, fn. 1; DE 49 at pp. 3-4).

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

## SUMMARY OF ARGUMENT

The District Court erred when it entered final judgment confirming the entire amount of an appraisal award in favor of Vista View, including patently non-covered items, without ever considering and ruling on Chubb's longstanding and consistently asserted coverage defenses to portions of Vista View's claims of loss. Appraisals are binding with respect to the amount of loss, and panels can occasionally address issues of causation when determining such dollar figures, but in all cases issues of coverage are exclusively reserved to the judiciary. Florida law also uniformly holds that an insurer does not waive its coverage defenses simply by participating in an appraisal, and can bring a subsequent coverage challenge following an award.

Recent case law in Florida has also confirmed that an insurer has the ability following an appraisal to assert coverage challenges to portions of the award reflecting what it believes to be non-covered losses, while at the same time accepting the amount of loss determinations regarding other admittedly covered items of loss. Both state and federal case law confirm that the trial court has the discretion to rule on these partial coverage challenges either before or after the appraisal, and in the latter situation the trial court can order that the appraisal panel produce an itemized award to facilitate the trial court's later coverage analysis and parsing of the award between covered and non-covered losses. It is only if and

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

when a court finds that coverage exists under the terms of a given policy that the appraisal panel's amount of loss determinations become binding with respect to those judicially-determined covered losses.

In declining to conform its orders to this case law, the District Court made several factual and legal errors. The District Court inaccurately stated that there was one loss claim for which Chubb had allegedly admitted coverage, and failed to appreciate that there were in fact two claims of loss, only one of which was admitted, with the other being consistently denied. Moreover, it confused the concepts of causation and coverage, thereby abdicating its exclusive responsibility to rule on coverage issues.

The District Court also ignored recent state case law and instead cited to an inapplicable and outdated decision by this Court that improperly relied on dicta and thereby misinterpreted a key Florida Supreme Court decision, has been rejected for this reason by subsequent Florida appellate courts, and is distinguishable in any event because of disclaimer language in the appraisal award itself that clearly indicated that the appraisal panel had not addressed any of Chubb's coverage defenses. Furthermore, the District Court's orders violated Chubb's due process rights, and flew in the face of common sense and fundamental fairness. As a result, the lower court's final judgment must be reversed and remanded, with instructions for the court to rule on Chubb's coverage

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

defenses and adjust the appraisal award accordingly.   In the alternative, Chubb requests that this Court certify a question to the Florida Supreme Court as to whether Florida law allows an insurer to challenge coverage regarding a portion of an appraisal award, or whether the insurer can only challenge coverage with respect to the whole loss, and nothing less, after an appraisal has occurred.

## ARGUMENT

## I.     THE DISTRICT COURT ERRED AS A MATTER OF LAW BY ENTERING JUDGMENT WITHOUT EVER CONSIDERING CHUBB'S COVERAGE DEFENSES.

This appeal seeks to have this Court clarify that an insurer's coverage defenses to particular claims of loss raised by its insured must be addressed and ruled on by the district court at some point, and cannot be completely ignored simply because an appraisal panel has made amount-of-loss determinations for both covered and non-covered aspects of the claimed losses.  The District Court below never considered Chubb's consistently held and repeatedly asserted legal argument that the terms, conditions and exclusions contained in the Policy applied to preclude coverage for significant portions of Vista View's claims and, later, the appraisal panel's award.  Instead, the District Court entered judgment for the entire amount of the appraisal award without regard to whether it included non-covered losses for which the insured had not bargained and to which they were not legally entitled.  In doing so, the District Court disregarded and misinterpreted applicable

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

Florida law, improperly awarded Vista View a windfall recovery, undermined important policy goals, and violated principles of fundamental fairness and due process. This Court should not allow such an erroneous, unfair decision to stand.

**A.    Insurance appraisals are enforceable, encouraged, and can sometimes address issues of causation, but questions of coverage must be determined exclusively by the courts.**

Because this matter is in federal court on diversity grounds, Florida's substantive law applies to this controversy. *See Grupo Televisa, S.A. v. Telemundo Commc'ns Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). Appraisal clauses have been commonly used in Florida insurance policies, and are in fact "preferred, as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits." *Fla. Ins. Guar. Ass'n, Inc. v. Olympus Ass'n, Inc.*, 34 So. 3d 791, 794 (Fla. 4th DCA 2010). Appraisal clauses are consistent with "the general, even overwhelming, preference in Florida for the resolution of conflicts through any extra-judicial means, especially arbitration, for which the parties have themselves contracted." *State Farm Fire & Cas. Co. v. Middleton*, 648 So. 2d 1200, 1201-02 (Fla. 3d DCA 1995).

Appraisal clauses such as the one contained in the Policy here are generally binding and enforceable. However, the extent to which coverage issues may be preserved pending the outcome of appraisal has been an issue the courts have struggled with as this area of the law has developed. One early point of contention

in Florida law relevant here concerned whether the inclusion of so-called "reservation of rights" or "right to deny" language in these appraisal clauses rendered them unenforceable due to lack of mutuality.  Chubb's Policy contained such language, which stated that "[i]f there is an appraisal, we will still retain our right to deny the claim." (DE 22, Ex. A at p. A 62).

The first Florida case to address this issue was *American Reliance Insurance Co. v. Village Homes at Country Walk*, 632 So. 2d 106 (Fla. 3d DCA 1994), which held that a similar clause rendered the appraisal provision unenforceable due to lack of mutuality.  *See id.* at 107-08.  In his dissenting opinion, however, Judge Cope reasoned that such clauses were enforceable because they simply meant that the insurer retained the right to challenge coverage issues after the appraisal, which was only intended to be binding on the parties with respect to "the extent of the loss."  *Id.* at 108-09.  Judge Cope reasoned as follows:

> The purpose of the "right to deny" sentence is to state, quite simply, that if the insured requests an appraisal and the insurer proceeds with the appraisal process, <u>the insurer has not thereby abandoned any coverage defenses which may be available to it</u>.

*Id.* at 108.  Judge Cope's dissenting opinion was later adopted by the First District Court of Appeal in *Scottsdale Insurance Co. v. Desalvo*, 666 So. 2d 944 (Fla. 1st DCA 1995), and cited favorably in *Paradise Plaza Condominium Ass'n, Inc. v. The Reinsurance Corp. of New York*, 685 So. 2d 937 (Fla. 3d DCA 1996), in which

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

the Third District Court of Appeal reversed itself on this issue only two years after *Country Walk*.

Before the Third District Court of Appeal had effectively rendered the controversy moot with its *Paradise Plaza* reversal, the Florida Supreme Court intervened to resolve the then-conflict among the appellate courts in *State Farm Fire & Casualty Co. v. Licea*, 685 So. 2d 1285 (Fla. 1996).[6] The <u>sole</u> question before the Florida Supreme Court in *Licea* was whether appraisal clauses containing reservation of rights language were "void for lack of mutuality." *Id.* at 1286. The court recognized that one key factor supporting those decisions finding the clause enforceable was that the language merely recognized the reality that an insurer had the power to raise coverage challenges following an appraisal, and that the "determination of coverage was reserved to the courts." *Id.* at 1287.

The Florida Supreme Court then cited Judge Cope's dissent in *Country Walk*, holding that it, along with the cases referenced above, represented the "better interpretation." *Id.* The court concluded by holding: "<u>If</u> a court decides that coverage exists, the <u>dollar value</u> agreed upon under the appraisal process will be binding upon both parties." *Id.* at 1287-88. Thus, *Licea* and the cases to which it

---

[6] Amazingly, the Florida Supreme Court issued its opinion in *Licea* on the very same day – December 19, 1996 – that the Third District Court of Appeal reversed itself in *Paradise Plaza*.

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

cites favorably stand for the proposition that "right to deny" language does not render an appraisal clause unenforceable, because it accurately reflects the insurer's right to bring subsequent coverage challenges to an appraisal award, even if the award is otherwise binding with respect to the amount of damages recoverable if coverage exists.

This conclusion is based on basic tenets of Florida law: that appraisals are meant to be limited to factual determinations involving dollars and cents, and that only courts can rule on legal coverage issues.  "Arbitrable issues involved with appraisal, by their nature, are narrowly restricted to the resolution of specific issues of actual cash value and amount of loss."  *U.S. Fid. & Guar. Co. v. Romay*, 744 So. 2d 467, 469 (Fla. 3d DCA 1999); *see also Desalvo*, 666 So. 2d at 947 (holding that "while the results of an appraisal will be binding on the issues of value of property and amount of loss, the insurer may still litigate the issue of coverage").[7] Conversely, "the rule is also well established that the appraisal process cannot be used to determine coverage issues, which are judicial determinations."  *Opar v. Allstate Ins. Co.*, 751 So. 2d 758, 760 (Fla. 1st DCA 2000), *disapproved on other grounds by Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021 (Fla. 2002).

---

[7]  This is consistent with the appraisal clause contained in the Policy, which states that appraisal is intended to address "the amount of the loss or damage" and that the panel should limit its conclusions to "the value of the property and the amount of the loss or damage." (DE 22, Ex. A at p. A 62).

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

While these two rules are relatively straightforward, confusion nonetheless arose in Florida regarding "whether causation is a coverage question for the court or an amount of loss question for the appraisal panel." *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1022 (Fla. 2002). This question regarding the proper scope of appraisal typically arose where the insurer admitted that coverage existed for a given loss, making appraisal appropriate, but the total monetary value of that singular loss consisted of a mixture of covered causes of loss (such as windstorm damage or rain) and non-covered causes of loss (such as wear and tear or dry rot). Under such circumstances, the courts had to decide whether it would be appropriate for appraisal panels to distinguish between causes of loss as a factual matter when arriving at amount of loss, or whether this inquiry must be left to the courts as coverage determinations.

Once again, the appellate courts in Florida split on this issue. The Second District Court of Appeal in *Nationwide Mutual Insurance Co. v. Johnson*, 774 So. 2d 779 (Fla. 2d DCA 2000), held that causation was always an issue of fact for the appraisal panel even where the insurer completely denied that coverage existed. However, the Third District Court of Appeal in *Gonzalez v. State Farm Fire & Casualty Co.*, 805 So. 2d 814 (Fla. 3d DCA 2000), held that causation was an issue for the courts unless the insurer admitted there was a covered loss and there was

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

disagreement on the amount of loss, in which case causation could be submitted to the appraisal panel.

At the outset, the Florida Supreme Court noted that both lower court decisions had relied on dicta contained in *Licea* to reach their opposing opinions. While *Nationwide* and *Gonzalez* (and *Johnson*) dealt with the scope of appraisals and the proper division of labor between appraisal panels and courts, the *Licea* decision (as described above) was limited to whether appraisal clauses were void for lack of mutuality because of a retained rights clause. Thus, the Florida Supreme Court observed that "[t]he issue in *Licea*, however, was not the issue that is presented in *Johnson* or *Gonzalez*." *Johnson*, 828 So. 2d at 1024. After discussing the limited holding in *Licea*, the Court stated that a passage at the end of *Licea* that "addressed the appraisal process" was the "focus of the conflict between the *Johnson* and *Gonzalez* cases with respect to the appraisal panel's role in determining the amount of loss." *Id.* at 1025. That passage was as follows:

> [W]here there is a demand for an appraisal under the policy, the only "defenses" which remain for the insurer to assert are that there is no coverage under the policy for the loss as a whole or that there has been a violation of the usual policy conditions such as fraud, lack of notice, and failure to cooperate. We interpret the appraisal clause to require an assessment of the amount of a loss. This necessarily includes determinations as to the cost of repair or replacement and whether or not the requirement for a repair or replacement was caused by a covered peril or a cause not covered, such as normal wear and tear, dry rot, or various other designated, excluded causes.

*Id.*, *quoting Licea*, 685 So. 2d at 1287-88. As will be more fully described in

Section C below, this ambiguous and imprecise dicta from *Licea* not only created the conflict with respect to causation and the scope of appraisal seen in *Nationwide* and *Gonzalez*, but would also later cause needless confusion regarding an insurer's ability to raise coverage defenses to portions of an award following appraisal.

In *Johnson*, the Florida Supreme Court resolved the conflict by adopting the analysis of Judge Cope in *Gonzalez* and holding "that causation is a coverage question for the court when an insurer wholly denies that there is a covered loss and an amount-of-loss question for the appraisal panel when an insurer admits there is covered loss, the amount of which is disputed." *Id.* at 1022. Thus, where a covered loss was admitted, the appraisers were empowered to distinguish between payments necessary because of covered causes and non-covered causes. *See id.* at 1025. On the other hand, if the insurer took the position that there was no coverage for the claim whatsoever, then the cause of the claim would be a pure judicial question. *See id.* In <u>either</u> case, however, "coverage issues were to be judicially determined by the court and were not subject to a determination by appraisers." *Id.*

In sum, appraisals are binding only with respect to the amount of loss, and clauses requiring appraisal are enforceable despite reserved rights language because it is axiomatic that insurers retain the right to assert coverage challenges following appraisal. Where the insurer has admitted coverage for a specific loss

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

but the parties dispute the amount of that loss, an appraisal panel is empowered to consider factual causation as part of its monetary loss analysis and allocate costs to covered and non-covered elements. However, regardless of whether or not an appraisal panel addresses causation as part of its amount-of-loss determination, it cannot rule on coverage issues, which are exclusively reserved to the judiciary.

**B.    Where an insurer contests the scope of coverage by admitting coverage for certain claimed losses and denying coverage for others, like Chubb here, Florida law allows the insurer to challenge coverage for disputed elements of loss following an appraisal.**

The *Johnson* case described above dealt with two diametrically opposite circumstances: where the insurer admits coverage for the claimed loss or losses and only disputes the amount of loss on the one hand, and where the insurer denies coverage for the entirety of the claimed loss or losses on the other hand. There is a third option, not directly addressed by *Licea* or *Johnson*, where the insurer admits coverage for one claim of loss and only disputes the amount of that loss, but also completely denies coverage for a second claim of loss arising out of the same event.

This is the situation here, where Chubb has admitted coverage for repair to the common area walkways, corridors and entrance tiles to Vista View's four apartment buildings necessitated by water and sewage intrusion, but has consistently denied that coverage existed for the replacement of the complex's entire underground sanitary system. (DE 22, 23, 43, 49). There can be no doubt

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

that these were two distinct and separate claims of loss, although they arose out of the same sewage backup event. The first claim related to the cleanup of the consequences of the sewage backup in the complex's common areas, while the second claim, raised by Vista View for the first time five months after the first claim, related to the complete replacement of the entire system itself. (DE 22 at pp. 10-11).

While Chubb tendered payment of $18,810.81 for the initial claim of loss, the investigation of Vista View's second claim revealed that the cause of loss to the sewer pipes themselves was wear and tear, poor maintenance leading to grease buildup, poor design leading to the pipes' upward pitch or "belly," and that the pipes were at the end of their useful life, as evidenced in the reports produced by TDT Plumbing, SEA, Ltd., Exponent, and the appraisal panel's independent plumbing contractor. (DE 6 at Ex. A-D; DE 22 at Ex. C; DE 43 at Ex. A). As a result, Chubb repeatedly argued below that the Policy excluded coverage for repair or replacement of the underground pipes and the costs associated with unearthing the pipes to accomplish the replacement, based on the Policy's definition of "building," the Loss Payment Limitations provision, and a number of exclusions. (DE 22, 23, 43, 49). Chubb also argued that Vista View was only entitled to actual cash value for any covered claims under the Policy language, and not replacement cost value. (DE 43 at p. 3, fn. 1; DE 49 at pp. 3-4).

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

Under these circumstances, questions arise regarding when an insurer's coverage challenge should be addressed, and whether an appraisal of both covered and non-covered losses can foreclose the insurer's ability to raise coverage challenges post-appraisal. With regard to timing, Florida law generally leaves it to the trial court's discretion as to whether coverage issues should be addressed before or after an appraisal is conducted. *See, e.g.*, *Sunshine State Ins. Co. v. Rawlins*, 34 So. 3d 753, 754 (Fla. 3d DCA 2010) ("[T]he order in which the issues of damages and coverage are to be determined by arbitration and the court is left to the discretion of the trial court."); *Paradise Plaza*, 685 So. 2d at 941 (same); *Middleton*, 648 So. 2d at 1203 (same). By permitting a trial court to exercise its discretion to consider coverage issues following an appraisal, these cases indicate that an insurer like Chubb does not waive its ability to assert coverage defenses to an appraisal award. *See, e.g.*, *Fla. Windstorm Underwriting v. Gajwani*, 934 So. 2d 501 (Fla. 3d DCA 2005) (holding that insurer is not automatically required to cover all aspects of damage considered by the panel because the insurer did not waive coverage defenses by participating in the appraisal).

The only remaining issue, then, is whether an insurer has the ability following an appraisal to assert coverage challenges to <u>portions</u> of an award reflecting non-covered losses, while at the same time accepting the award with respect to those aspects of loss that the insurer has admitted were covered under its

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

policy.  The only Florida state cases that have directly addressed this issue have all

determined that an insurer does have the right to assert coverage challenges to

some, but not all, of an appraisal award.  First, *Liberty American Insurance Co. v.*

*Kennedy*, 890 So. 2d 539 (Fla. 2d DCA 2005), involved an insurer (Liberty

American) that admitted coverage for certain losses, but denied coverage for that

portion of the claimed loss that would have reimbursed the insureds for repair

expenses that had not yet been incurred.  *See id.* at 540.  Writing for the Second

District Court of Appeal, then-Judge Canady, the current Chief Justice of the

Florida Supreme Court, described the decision as follows:

> [W]e conclude that in the underlying action here the submission of the
> claim to appraisal does not foreclose Liberty American from
> challenging an element of loss as not being covered by the policy.
> Only if a court determines that coverage exists for that element of loss
> will the amount of appraisal for that element of loss be binding on
> Liberty American.

*Id.* at 541-42.  The basis for this conclusion arose out of the holding in *Licea* that

coverage challenges were exclusively judicial questions, and that "*Licea* made

clear that submission of a claim to appraisal does not foreclose an insurer's

subsequent challenge on an issue of coverage."  *Id.* at 541.  The *Kennedy* decision

quoted and emphasized *Licea*'s observation that the dollar values arrived at by an

appraisal panel are binding only "**if**" a court decides that coverage exists, and noted

that *Licea* "established that there is a dichotomy between the issue of coverage and

the issue of valuation of a covered loss." *Id.*, *quoting Licea*, 685 So. 2d at 1287-88.

The Fourth District Court of Appeal has also determined that an insurer can challenge portions of an appraisal award after the fact. In *Fisher v. Certain Interested Underwriters at Lloyds Subscribing to Contract 242/99*, 930 So. 2d 756 (Fla. 4th DCA 2006), the insurer paid the entire amount of the appraisal award to the insured, but then attempted to seek reimbursement for that portion of the award representing future living expenses and depreciation, which the insurer asserted was not covered under the homeowners policy. *See id.* at 757. The court determined that coverage challenges as to part of an appraisal award were permitted and that the insurer's payment did not affect this right, holding:

> The insurer tendered this payment to avoid any claim for bad faith…. This did not prevent the insurer from asking the state trial court to rule on the issue of coverage for the homeowners' claim for future additional living expenses and depreciation. <u>The trial court found the claim was not covered and ordered the homeowners to return those funds. We find no error in the court's decision on this issue and affirm that part of the judgment requiring the homeowners to repay the insurer</u>.

*Id.* at 759-60.

Most recently, in *Florida Insurance Guaranty Ass'n, Inc. v. The Olympus Ass'n, Inc.*, 34 So. 3d 791 (Fla. 4th DCA 2010), the Fourth District Court of Appeal was again faced with an insurer (FIGA) that wanted to challenge a portion of an appraisal award, this time that part of the award that reimbursed the insured

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

(Olympus) for waterproofing and painting, which FIGA believed was not covered. *See id.* at 793.   Citing *Fisher* and *Kennedy* for support, the court held: "[W]e conclude that the trial court erred by entering final judgment in favor of Olympus and awarding it the amount set forth in the appraisal (less the deductibles), without first deciding the issue of coverage liability. . . .  As explained in *Kennedy* and supported by *Fisher*, FIGA could contest part of the liability without challenging coverage as a whole."  *Id.* at 796; *see also State Farm Fla. Ins. Co. v. Hill*, 1 So. 3d 1272, 1274 (Fla. 3d DCA 2009) (vacating court order purporting to be a final judgment that simply confirmed an appraisal award because it did not address all issues in the case, where substantive liability questions remained).

In addition to these decisions specifically allowing an insurer like Chubb to challenge portions of an award after the appraisal, other cases implicitly endorse this result by requiring that the appraisal panel produce an itemized award that delineates the amounts for each item of loss.  Such an itemized appraisal award would only be necessary if it were possible for the court to later parse out the totals and exclude portions of the award that were not covered under the applicable policy.  For example, in *Dorset House Condominium Ass'n, Inc. v. QBE Insurance Corp.*, 2007 U.S. Dist. LEXIS 62298, 20 Fla. L. Weekly Fed. D980 (S.D. Fla. No. 07-21324-CIV-JORDAN Aug. 1, 2007), the district court ordered a line-item appraisal award, reasoning as follows:

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

> In this case, it is unclear whether the parties dispute only the amount of loss, or whether coverage is at issue as well. The Florida Supreme Court has clearly and specifically held that coverage issues are exclusively a question for the court, not for the arbitrator. Therefore, . . . <u>the purpose of requiring the arbitrator to use a line item appraisal form is simply so that if coverage issues arise following arbitration, those issues can be resolved by the court</u>. Otherwise, the court and the litigants will be forced to waste time and resources litigating the meaning of the value determined by the appraiser.

*Id.* at *1. In *Bonafonte v. Lexington Insurance Co.*, 2008 WL 2705437 (S.D. Fla. No. 08-21062-CIV-MARTINEZ July 9, 2008), another district court arrived at the same conclusion, noting that using a line-item appraisal form meant that "a court can readily identify any coverage issues that arise during the course of appraisal and resolve these without having to try to decipher what value the appraiser assigned for a particular type of damage." *Id.* at *2; *see also Olympus*, 34 So. 3d at 796 n.1 (citing favorably to *Bonafonte* and commenting with approval on the use of line-item appraisal forms to facilitate post-appraisal coverage challenges to portions of an award).[8] As a result, the law is clear in Florida that insurers can

---

[8] The District Court mistakenly believed that it could not order a line-item appraisal award unless the Policy itself required it. (DE 26 at p. 4). The case law contradicts this conclusion, allowing the trial court discretion to dictate the terms and conditions of the appraisal award. *See, e.g.*, *Kendall Lakes Townhomes Developers, Inc. v. Agric. Excess & Surplus Lines Ins. Co.*, 916 So. 2d 12 (Fla. 3d DCA 2005) (upholding trial court order that panel "shall . . . break down the amount of the loss by virtue of excluded causes" and that the trial court would determine causation, even though the *Johnson* decision would have otherwise required that the panel determine causation questions).

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

bring coverage challenges to portions of an appraisal award, and Chubb should have been allowed to do so here with respect to the approximately $850,000.00 of the award that Chubb had consistently argued was not covered under the Policy.

**C.    The District Court's erroneous decision was based on inapplicable and outdated case law, ignored a key distinguishing feature, unfairly provided a windfall recovery to Vista View, and violated due process, fundamental fairness, and common sense.**

Based on the cases described above,[9] Chubb properly requested that the District Court either rule on the various coverage issues before submitting the dispute to appraisal, or require that the appraisal panel issue a line-item appraisal so that the District Court could intelligently rule on Chubb's long-standing coverage defenses after the panel had completed its work. (DE 23).  The District Court erred as a matter of law in refusing both requests.  Even though the appraisal panel was not required by court order to itemize the damages, the panel nonetheless produced an itemized award. (DE 43, Ex. A).  However, the District Court compounded its original error when it again refused to rule on Chubb's coverage arguments, in contravention of *Kennedy*, *Fisher*, and *Olympus*.  For a variety of reasons, the District Court's legal reasoning was flawed, and its decision must be reversed.

---

[9] The Fourth District's decision in *Olympus* was issued shortly after Chubb filed its notice of appeal.

In its initial order refusing to address coverage issues prior to the appraisal and rejecting a line item award (DE 26), the District Court's confusion is evident. As a factual matter, the District Court appeared to be operating under the incorrect belief that there was only one claim, and failed to appreciate that there were instead two distinct claims of loss, one of which Chubb had acknowledged coverage for and the other which Chubb disputed. As a result, the District Court improperly determined that Chubb had "acknowledged coverage" for the "Petitioner's loss." (DE 26 at p. 2). The District Court also erroneously concluded that the underlying matter was more akin to *Johnson* where the insurer "admits that there is a covered loss, the amount of which is disputed," (*Id.* at p. 4), than to *Kennedy* and *Fisher*, where the insurer had admitted one loss but disputed another.

The District Court also confused the concepts of causation and coverage, stating in the same sentence that it was unable to adopt Chubb's request to "exclude any alleged <u>non-covered</u> items from the appraisal process" because, inaptly citing *Johnson*, "the question of <u>causation</u> must be left to the appraisers." (*Id.*). Even assuming that all causation questions with respect to both claims were properly left to the appraisal panel below, the District Court erred in believing that it could abdicate its responsibility to rule on coverage issues, which are <u>exclusively</u> matters for the judiciary. As stated by the Texas Supreme Court recently:

> Any appraisal necessarily includes some causation element, because setting the "amount of loss" requires appraisers to decide between

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

damages for which coverage is claimed from damages caused by everything else.  <u>This of course does not mean appraisers can rewrite the policy.  No matter what the appraisers say, [the insurer] does not have to pay for repairs due to wear and tear or any other excluded peril because those perils are excluded.</u>

*State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 893 (Tex. 2009); *see also* Anne D. Ogden, Appraisal Clauses in Homeowners Insurance Policies: An Overview, 27 No. 1 TRIAL ADVOC. Q. 24, 26 (Winter 2008) (observing how causation and coverage are closely related but distinct concepts, and citing *Licea* and *Kennedy* for the proposition that "the final determination of whether the loss as a whole, or only specific portions of the loss, are covered by the insurance policy is strictly a judicial question").

Having ordered appraisal before ruling on Chubb's coverage defenses, which was within its discretion, the District Court then erred in failing to ensure that the appraisal panel produced an itemized award.  Perhaps due to its inability to foresee that based on its decision it would ultimately be responsible for ruling on coverage issues after the appraisal, the District Court inappropriately rejected an itemization of damages that would have allowed it to differentiate between costs incurred for covered and non-covered losses, as described in *Dorset House*, *Bonafonte* and *Olympus*.

The appraisal panel unanimously produced an award that itemized damages, even though they were not required to do so by court order.  Thereafter, Chubb

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

again argued after issuance of the appraisal award that the District Court must rule on coverage issues and only enter judgment on that portion of the award that reflected losses appropriately covered by the Policy. (DE 43).  Instead, the District Court once again erroneously refused to address coverage at all, and entered final judgment on the entire amount of the award. (DE 50).  This decision was erroneous for a number of reasons.

Initially, this second order suffered from the same misconceptions as the first order. It misidentified the number of claimed losses, stating that Chubb had "acknowledged coverage" for "the loss." (*Id.* at pp. 1-2).  It again confused causation with coverage, stating that by asking the District Court "to exclude <u>non-covered items</u> from the Appraisal Award" Chubb was somehow running afoul of the first order, which the District Court characterized as "finding that the question of <u>causation</u> must be left to the appraisers." (*Id.* at p. 3).  The question of whether the appraisal panel addressed <u>causation</u> had nothing whatsoever to do with the District Court's duty to address <u>coverage</u>, an important point that the District Court clearly missed.

Other than these same two errors that impacted the first order, the District Court's only other support for refusing to rule on Chubb's coverage defenses after the itemized appraisal award was this Court's decision in *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 362 F.3d 1317 (11th Cir. 2004).  In *Three Palms*

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

*Pointe*, this Court addressed an insurer's post-appraisal challenge to that appraisal panel's decision to include relocation expenses as part of recoverable repair costs.

In the lower court, the Middle District of Florida noted that insurers had the ability under Florida law to bring post-appraisal coverage challenges, stating that "the procedure that Florida courts use (and have seemingly used for years)" was for the insured to move to confirm an appraisal and at that point "the insurer may assert as an affirmative defense <u>lack of coverage</u>. . . ." *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F. Supp 2d 1357, 1362 (M.D. Fla. 2003). The district court cited *Johnson*, *Licea* and *Gonzalez* for this proposition, and observed in a footnote that "it may be more practical" for the court to determine coverage issues before an appraisal instead of after an appraisal, "where coverage of the loss is completely denied by the insurer." *Id.* at 1362, n. 6.

After considering and rejecting the insurer's coverage arguments, the district court also held in the alternative that the insurer's arguments may not have been related to coverage in any event, because the "challenge is not as much a coverage question, but a question of whether personal relocation expenses should be included within the cost of repair," which the lower court believed was a causation question. *Id.* at 1365-66. In either case, the lower court rejected the insurer's arguments and adopted the appraisal award in its entirety. *See id.* at 1366.

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

This Court then affirmed the district court's decision on appeal, but on entirely new grounds not discussed below.  Citing to language at the end of the *Licea* decision, this Court stated that "the Florida Supreme Court held that if an insurer and an insured party go to appraisal, the insurer can only dispute coverage for the 'loss as a whole.'"  *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 362 F.3d 1317, 1318-19 (11th Cir. 2004), *citing Licea*, 685 So. 2d at 1288.  This Court believed that this language meant that an insurer could only challenge coverage following an appraisal "for the claim as a whole, and not anything less." *Id.* at 1319.  It concluded that once an award had been made, Florida law under *Licea* dictated that the only coverage argument that could be raised by the insurer was "lack of coverage for the entire claim," and that bringing a coverage challenge to "*part* of an appraisal award . . . is not permitted."  *Id.* (emphasis in original).

For a variety of reasons, *Three Palms Pointe* should not have been applied to prevent Chubb's post-appraisal coverage challenge.  First, in the years following the *Three Palms Pointe* decision, Florida courts have rejected its holding and have determined that it misinterpreted dicta from *Licea* to improperly deny an insurer the right to challenge portions of an appraisal award after the fact.  As described above, the *Kennedy*, *Fisher*, and *Olympus* decisions have all determined that *Licea* does not limit an insurer's coverage challenge to the entire loss, and actually implicitly allows partial coverage challenges based on *Licea*'s central holding that

submission of a claim to appraisal does not foreclose an insurer's subsequent challenge on an issue of coverage, which is exclusively a judicial question. Indeed, *Licea* itself stated that "by participating in an arbitration proceeding to determine the amount of loss suffered by an insured <u>the insurer is in no way deprived of the right to later contest the existence of insurance coverage for that loss</u>." *Licea*, 685 So. 2d at 1286. Even the district court in the *Three Palms Pointe* decision had interpreted *Licea* as allowing partial post-appraisal coverage challenges.

Only one year after this Court's *Three Palms Pointe* decision, the Second District Court of Appeal in *Kennedy* stated in no uncertain terms that "the court in *Three Palms Pointe, Inc.* misinterpreted the holding of *Licea*" in ruling that coverage challenges to parts of an appraisal award were permitted in Florida. 890 So. 2d at 541. After recognizing that *Licea* dealt with the narrow issue of the enforceability of appraisal clauses containing reserved rights language, the *Kennedy* court noted that the underlying rationale for *Licea* was that a coverage challenge is a judicial function, and that "*Licea* made clear that submission of a claim to appraisal does not foreclose an insurer's subsequent challenge on an issue of coverage." *Id.* It then observed as follows:

> A coverage issue may exist, of course, even where the insurer has not denied the claim as a whole. <u>The issue of coverage is not necessarily a matter of all or nothing</u>. The court in *Licea* did not consider the specific circumstance where the scope of coverage is disputed. <u>The</u>

> reference in *Licea* to an insured's right to "dispute the issues of coverage as to the whole loss" was not necessary to the court's holding that there was no lack of mutuality. To the extent that the reference to "whole loss" can be understood to limit an insured's right to dispute the scope of coverage where a claim has been submitted to appraisal, it is dictum.

*Id.*

Likewise, the Fourth District Court of Appeal in *Fisher* specifically mentioned the *Three Palms Pointe* decision, and then held that the trial court was correct to address and rule on a coverage challenge to a portion of the appraisal award after the appraisal process was complete. *See Fisher*, 930 So. 2d at 759-60. And in *Olympus*, the Fourth District Court of Appeal agreed with the holding in *Kennedy* and expressly determined that *Three Palms Pointe* had misinterpreted *Licea*. It held that "[a]lthough *Licea* made mention of challenging a 'whole loss,' it is not reasonable to order an insurer to pay for all elements set forth by an appraiser if the insurer raises an issue of coverage as to only one element and not the whole claim." *Olympus*, 34 So. 3d at 795. It concluded that "the insurer could contest coverage and liability as to only one element of the claim and appraisal award." *Id.* at 796.

Federal district courts have noted this rejection of *Three Palms Pointe* by Florida's state courts, and have declined to enforce its holding as a result. For example, in *Sands on the Ocean Condominium Ass'n, Inc. v. QBE Insurance Corp.*, 2009 WL 790120 (S.D. Fla. Mar. 24, 2009), the court allowed the insurer to

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

pursue coverage challenges to portions of an appraisal award. It questioned whether *Three Palms Pointe* was valid law, noting that *Kennedy* "stated that *Three Palms* misinterpreted *Licea*, relying improperly on dicta," and that "given the holding of *Kennedy* . . . the Court finds that [the insurer] is entitled to challenge coverage as to portions of the appraisal award." *Id.* at *3. Moreover, in *Jablonski v. St. Paul Fire & Marine Insurance Co.*, 2009 WL 2252094 (M.D. Fla. July 24, 2009), the court noted the criticism of *Three Palms Pointe* in *Kennedy*, *Fisher*, and *Sands on the Ocean Condo* and indicated that *Three Palms Pointe* had been "disapproved by Florida state courts." *Id.* at *8, n.4.

Thus, based on recent developments, this Court should recognize that *Three Palms Pointe* no longer represents an accurate statement of Florida law, and that pursuant to *Kennedy*, *Fisher*, and *Olympus*, an insurer like Chubb has the ability to assert coverage challenges to portions of an appraisal award. In diversity actions, this Court must reject a prior panel's decision where subsequent cases issued by Florida's state courts directly conflict with this Court's inaccurate interpretation of Florida law. As noted in *Lee v. Frozen Food Express, Inc.*, 592 F.2d 271 (5th Cir. 1979), decisions by previous Eleventh Circuit panels on Florida law in diversity cases are binding <u>unless</u> there is "a subsequent state court decision . . . which

makes this Court's decision clearly wrong." *Id.* at 272.[10]  Likewise, this Court "is bound to adhere to decisions of [Florida's] intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F.2d 817, 820 (11th Cir. 1985) (citation omitted); *see also Maryland Cas. Co. v. Hallatt*, 326 F.2d 275, 276-77 (5th Cir. 1964) (reversing a previous panel's interpretation of Florida law after the Third District Court of Appeal "categorically and by name rejected" the earlier opinion that was called "dead wrong," highlighting "our misapplication of governing state law" that was "revealed by an intervening clear enunciation emanating from a Florida Appellate Court").  Here, *Kennedy*, *Fisher*, and *Olympus* have explicitly rejected *Three Palms Pointe* and highlighted that case's misconception of state law.  As such, these intermediary appellate court decisions are binding on this Court with respect to Florida law, and must be adopted in lieu of *Three Palms Pointe* in this diversity action.

Even if *Three Palms Pointe* is deemed to apply, the District Court nonetheless erred in failing to appreciate a key distinguishing feature precluding its application to the case at bar.  Unlike in *Three Palms Pointe*, the appraisal award

---

[10] Decisions by the former Fifth Circuit issued before October 1, 1981 are binding as precedent in the Eleventh Circuit.  *See Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

here specifically stated, in bold lettering on the very first page, that the award was

"**[s]ubject to terms and conditions of the insurance policy**." (DE 43, Ex. A at p.

A 1).   This language makes it clear that the appraisal panel did not consider

coverage issues or the language of the Policy in arriving at its total award, but

instead simply assigned dollar figures to each claimed type of damage.   Such a

disclaimer did not exist in *Three Palms Pointe*, and therefore its holding should not

apply here.   This very fact was found compelling by the Southern District of

Florida in *Sands on the Ocean Condo* in distinguishing *Three Palms Pointe*:

> The Court finds that *Three Palms* is of limited use based on the
> disclaimer expressly included in the appraisal award by the appraisers.
> In this case, the clear language states that the award was "made
> without any consideration of . . . any terms, conditions, provisions or
> exclusions" of the insurance policy and that "no attempt by the
> appraisers have been made regarding the interpretation" of the policy.
> Thus, the award reflects the agreement of the appraisers as to the
> amount owed to Plaintiff based on the evidence of property damage
> before them.   It does not reflect the amount owed to Plaintiff under the
> policy.   As such, *Three Palms* does not speak to this particular type of
> appraisal award.

2009 WL 790120 at * 2.  Here, as in *Sands on the Ocean Condo*, the insurer should

have the right to challenge coverage as to a portion of the award "[g]iven the

holding of *Kennedy*, in conjunction with the language in this appraisal award."  *Id.*

at *3.  The *Olympus* court also found this distinguishing feature persuasive, citing

the decision in *Sands on the Ocean Condo* and stating that "[s]imilarly, here, the

appraisal award form contained comparable language."  34 So. 3d at 796; *see also*

48

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

*Citizens Prop. Ins. Corp. v. Cuban-Hebrew Congregation of Miami, Inc.*, 5 So. 3d 709, 711 (Fla. 3d DCA 2009) (holding that appraisal award must be reduced by amounts of deductible and prior payments, because the award only determined "the amount of an insured's loss," based on an explicit disclaimer in the award itself). Thus, the District Court below should have allowed Chubb to challenge portions of the appraisal award, even if guided by the *Three Palms Pointe* decision.

More fundamentally, the District Court's refusal to address or rule on Chubb's consistently-held legal coverage defenses defies common sense and violates principles of fairness. Chubb has admitted that coverage existed for the common area walkways, corridors, and entrance tiles, and it immediately paid Vista View for these damages once the appraisal panel established the appropriate cost. However, Chubb has maintained throughout that the Policy does not cover any other elements of loss relating to the replacement of the entire sewer system, but the District Court's decisions preclude any consideration of these arguments and require Chubb to make payments to Vista View to which it may not be entitled. Indeed, Vista View's counsel repeatedly admitted that its Policy did not cover at least one part of the appraisal award – $175,770.00 for the actual pipe replacement. *See supra* pages 17-18. To require Chubb to reimburse its insured for non-covered items that even the insured has admitted the Policy does not cover,

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

thereby awarding Vista View a windfall recovery, is simply untenable and cannot possibly be the outcome dictated by Florida law.

By confirming the entire appraisal award without ruling on Chubb's coverage defenses, the District Court essentially rewrote the Policy to remove the terms, conditions and exclusions on which Chubb was relying, thereby improperly expanding coverage beyond that which the parties bargained for. Numerous Florida cases admonish that "[c]ourts have no power to create insurance coverage, if it does not otherwise exist by the terms of the policy." *Gen. Sec. Ins. Co. v. Barrentine*, 829 So. 2d 980, 981-82 (Fla. 1st DCA 2002). *See also Morrison v. Allstate Indem.*, 1999 WL 817660 *2 (M.D. Fla. Sept. 9, 1999) ("It is not within the purview of the courts to create insurance coverage where none exists on the face of the insurance contract."); *Telemundo Television Studios, LLC v. Aequicap Ins. Co.*, --- So. 3d ----, 2010 WL 2382595 *1 (Fla. 3d DCA June 16, 2010) (same); *Fernandez v. U.S. Fid. & Guar. Co.*, 308 So. 2d 49, 49 (Fla. 3d DCA 1975) ("This court may not construe an insurance policy in such a manner as to rewrite the agreement entered into between the parties").

Expanding on this principle, the Florida Supreme Court in *AIU Insurance Co. v. Block Marina Investment, Inc.*, 544 So. 2d 998 (Fla. 1989), determined that a statute regulating insurer conduct or other such technical requirement cannot be interpreted to mandate the alteration of the insurance contract. Addressing a

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

statute involving mandatory insurer notification to policyholders, the court held that the statute cannot be interpreted "to give an insured coverage which is expressly excluded" as a penalty for non-compliance, because judicial or legislative action "may not be used to create or extend coverage." *Id.* at 999-1000.

Notably, the court found that a contrary result "has the effect of rewriting an insurance policy . . . , thus placing upon the insurer a financial burden which it specifically declined to accept." *Id.* at 1000. The Florida Supreme Court concluded that such a construction "presents grave constitutional questions, the impairment of contracts and the taking of property without due process of law." *Id.* Interpreting *Block Marina*, this Court has observed that it evidences the Florida Supreme Court's reluctance to alter the terms of an insurance contract "to create coverage that is not provided for under the policy." *Essex Ins. Co. v. Zota*, 466 F.3d 981, 985 (11th Cir. 2006). A subsequent district court decision noted that *Block Marina* should be interpreted broadly and was not limited to the specific statute under consideration in that case, stating that "the underlying premise of *Block Marina* is that a technical statutory requirement should not be utilized to create coverage where coverage would not normally be found pursuant to the policy." *Essex Ins. Co. v. Zota*, 607 F. Supp. 2d 1340, 1350 (S.D. Fla. 2009). Here, the District Court is using a similar technical requirement – the Policy's appraisal provision – to unconstitutionally expand the Policy to create coverage

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

that simply does not exist, impairing Chubb's right to contract and depriving it of bargained-for property rights. Because "[t]his would have the effect of altering the terms of the insurance contract because <u>the insurance contract bargained for by the parties included the exclusions</u>," *id.* at 1351, the District Court's actions were improper and should be reversed.

Moreover, by entering final judgment before giving Chubb an opportunity to be heard on its coverage defenses, the District Court has further denied Chubb its due process rights. Florida law has long established that due process requires fair notice and a real opportunity to be heard and defend in an orderly procedure before judgment is rendered. *See J.B. v. Fla. Dep't of Children and Family Servs.*, 768 So. 2d 1060, 1063 (Fla. 2000). "Due process envisions a law that hears before it condemns, proceeds upon inquiry, and renders judgment only after proper consideration of issues advanced by adversarial parties." *Scull v. State*, 569 So. 2d 1251, 1252 (Fla. 1990). To satisfy due process requirements, the hearing on a party's defenses must be "meaningful and complete and not merely colorable or illusive." *Epps v. State*, 941 So. 2d 1206, 1207 (Fla. 4th DCA 2006). By failing to even address or consider Chubb's coverage challenges, the District Court denied Chubb any opportunity to be heard and therefore denied Chubb its constitutionally protected due process rights, rendering the final judgment void. To the extent that

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064

*Three Palms Pointe* or any other case mandates this result, they are violative of due process considerations.

The District Court's ruling also creates perverse incentives and leads to anomalous results. Essentially, the District Court has penalized Chubb's decision to admit coverage and reimburse Vista View for the initial claim of loss, because the result of the District Court's decision is that Chubb had to pay for all subsequent claims arising out of this initial loss, whether covered under the policy or not, once it agreed to pay on the initial claim. This would create an inappropriate incentive for insurers to deny all claims as a baseline rule for fear that they would be stuck paying for large losses not covered under their policies, because there would be no opportunity for insurers to raise and argue any coverage defenses under such circumstances.[11]

Moreover, the outcome of this case would have been completely different if Vista View had delayed in asserting their second claim for replacement of the sewer system until after Chubb and Vista View had settled their initial claim related to the common area walkways, corridors, and entrance tiles. In that case, Chubb would have been deemed to have "denied that there was a covered loss"

---

[11] This would be contrary to a Florida statute requiring insurers to pay the undisputed amount of covered property damages within ninety days of notice of the claim. *See* § 626.9541(1)(i)(4), Fla. Stat. (2008).

53

under *Johnson* for Vista View's second claim, meaning that the coverage issues related thereto would have been "judicially determined by the court" and "not subject to determination by appraisers."  828 So. 2d at 1025.  It makes little sense for the outcome to be so drastically different depending merely on the order that the claims of loss were made, and the timing of their resolution.

As a result, the District Court's order confirming the appraisal award without allowing Chubb to raise or argue its coverage defenses to a portion thereof must be reversed.  In the alternative, given the conflict between this Court's *Three Palms Pointe* decision and subsequent Florida appellate court decisions in *Kennedy*, *Fisher*, and *Olympus* regarding the correct interpretation of *Licea* and *Johnson*, Chubb requests that this Court certify the following question to the Florida Supreme Court: Whether Florida law allows an insurer that has admitted coverage for certain losses, but has consistently denied coverage for other losses, to assert its longstanding coverage challenges post-appraisal regarding that portion of an appraisal award representing non-covered losses?

## CONCLUSION

Florida law allows insurers to assert coverage challenges to portions of appraisal awards after the fact, and the trial court has exclusive jurisdiction over such legal determinations.  Here, in contravention of Florida law, the District Court failed to consider or rule on Chubb's longstanding and consistently asserted

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

coverage defenses to parts of the appraisal award before entering final judgment for the entirety of the award in favor of Vista View.   The District Court erroneously relied on *Three Palms Pointe*, an Eleventh Circuit case that initially misinterpreted *Licea*, has since been consistently disapproved by Florida's courts, and in any event is distinguishable from the case at bar due to the disclaimer language contained in the award.   In addition, the District Court's order misapprehends key facts, violates Chubb's due process rights, and would produce unfair and anomalous results if allowed to stand.

WHEREFORE, Defendant/Appellant, Chubb Custom Insurance Company, respectfully requests that this Court reverse the final judgment below and direct the District Court on remand to rule on Chubb's coverage defenses and reduce the appraisal award as appropriate following a full and fair hearing.   In the alternative, Chubb requests that this Court certify a question to the Florida Supreme Court seeking guidance on Florida law as to whether or not an insurer is allowed to bring subsequent coverage challenges to part, but not all, of an appraisal award.

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL  33026 • TEL. 954/624-8700 • FAX 954/624-8064

Respectfully submitted,

BY: _Erik Bartenhagen_ _____

CINDY L. EBENFELD
Florida Bar No. 980579
cebenfeld@mhickslaw.com
ERIK P. BARTENHAGEN
Florida Bar No. 43259
ebartenhagen@mhickslaw.com
HICKS, PORTER, EBENFELD & STEIN, P.A.
Sheridan Professional Centre
11011 Sheridan Street, Suite 104
Cooper City, FL 33026
Tel: 954/624-8700
Fax: 954/624-8064
*Counsel for Appellant Chubb*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 13,988 words.

_Erik Bartenhagen_ _____

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on **August 3, 2010,** a true and correct copy of the

foregoing was served by mail on:

Leo A. Manzanilla, Esq.
LAW OFFICES OF LEO A. MANZANILLA, P.A.
770 Ponce de Leon Blvd., Suite 101
Coral Gables, FL 33134
Tel:   305/444-1887
Fax:   305/666-8427
Email: lawmanzanilla@hotmail.com
*Attorney for Appellee*

HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 SHERIDAN STREET, SUITE 104, COOPER CITY, FL 33026 • TEL. 954/624-8700 • FAX 954/624-8064